UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John Doe and Jane Doe, | File No. 20-cv-985 (ECT/BRT) |
| Plaintiffs, | |
| v. | |
| Alejandro Mayorkas,[1] Secretary of the Department of Homeland Security; U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; and Laura B. Zuchowski, Director of the Vermont Service Center of USCIS, | **AMENDED**[2] **OPINION AND ORDER** |
| Defendants. | |

---

Nicholas Ratkowsi, Contreras & Metelska, P.A., Saint Paul, MN, for Plaintiffs John Doe and Jane Doe.

Friedrich A. P. Siekert, United States Attorney's Office, Minneapolis, MN, for Defendants Alejandro Mayorkas, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, and Laura B. Zuchowski.

---

Plaintiffs John and Jane Doe received U nonimmigrant status ("U visas") from Defendant United States Citizenship and Immigration Services ("USCIS"). They

---

[1] Secretary of the Department of Homeland Security Alejandro Mayorkas is substituted for the former Acting Secretary Chad F. Wolf, because a "[public] officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

[2] This Opinion and Order was filed originally under seal to give the Parties an opportunity to determine whether all or part of the document should remain under seal. The Parties have since notified the Court that this Opinion and Order may be unsealed and filed publicly.

subsequently filed applications to adjust their status to become lawful permanent residents. USCIS approved Mrs. Doe's application but decided to reopen Mr. Doe's case and review its prior determinations. USCIS ultimately revoked Mr. Doe's U visa and prerequisite inadmissibility waiver, finding they had been erroneously approved. USCIS also revoked Mrs. Doe's U visa and prerequisite inadmissibility waiver based on its determinations in Mr. Doe's case. Plaintiffs brought this action to challenge the revocations as well as USCIS's delay in adjudicating Mr. Doe's application for adjustment of status. Soon after, USCIS denied Mr. Doe's application, and Plaintiffs filed an amended complaint to include a challenge to that denial. USCIS has since withdrawn the revocations, restored Plaintiffs' waivers of inadmissibility and U visas, and reopened and granted Mr. Doe's application for adjustment of status. Contending that these actions render the case moot, Defendants have moved to dismiss the case for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants' motion will be granted.

I

Plaintiffs are natives and citizens of Mexico who have resided in the United States for many years. Am. Compl. ¶¶ 29–30, 38–40 [ECF No. 9]. In 2010, Mr. Doe received a U-Certification from law enforcement officers, which allowed him to apply for U visas for himself and his wife, Mrs. Doe, pursuant to 8 U.S.C. § 1101(a)(15)(U).[3] *Id.* ¶¶ 41–42.

---

[3] Section 1101(a)(15)(U) provides for nonimmigrant status for an "alien who has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity," as described in clause (iii) of the statute, that violated the laws of the United States or occurred in the United States or its territories; who possesses information concerning criminal activity; and who "has been helpful, is being helpful, or is likely to be helpful to" law enforcement officials, prosecutors, judges or other authorities investigating

2

Plaintiffs also submitted a joint application for advance permission to enter as a nonimmigrant, requesting waiver of each Plaintiff's individual grounds of inadmissibility to the extent those grounds applied to the adjudication of their U visa petitions. *Id.* ¶ 43. After requesting additional evidence, which Mr. Doe provided, USCIS granted Plaintiffs' application for the prerequisite waivers of inadmissibility and their U visa petitions. *Id.* ¶¶ 44–50, 53.

In 2016, Plaintiffs filed applications for adjustment of status to become lawful permanent residents pursuant to 8 U.S.C. § 1255(m).[4] *Id.* ¶ 54. USCIS approved Mrs. Doe's application but made no ruling on Mr. Doe's application. *Id.* ¶ 56; *see id.* ¶ 57. Throughout 2017 and early 2018, Mr. Doe made multiple attempts to contact USCIS to inquire about the delay in processing his application. *Id.* ¶ 62. In early 2018, Mr. Doe's attorneys submitted a redlined application to correct mistakes in his previously filed application. *Id.* ¶¶ 63–64. Less than two months later, USCIS issued a notice of its intent to revoke Mr. Doe's U visa. *Id.* ¶ 65. Mr. Doe timely responded to the notice and submitted numerous documents in opposition to the revocation. *Id.* ¶ 73. In early 2019, USCIS issued a notice that it had reopened Mr. Doe's application for advance permission to enter as a nonimmigrant but did not provide a substantive explanation for doing so. *Id.* ¶¶ 74–75.

---

or prosecuting criminal activity. 8 U.S.C. § 1101(a)(15)(U)(i). It also provides for nonimmigrant status for the spouse of such an individual. *Id.* § 1101(a)(15)(U)(ii)(II).

[4]   Under § 1255(m), the Secretary of Homeland Security may adjust the status of an individual who has nonimmigrant status under § 1101(a)(15)(U) if the individual "has been physically present in the United States for a continuous period of at least 3 years" since the issuance of the U visa and "in the opinion of the Secretary of Homeland Security, the alien's continued presence in the United States is justified on humanitarian grounds, to ensure family unity, or is otherwise in the public interest."

Three days later, USCIS issued another notice of its intent to revoke Mr. Doe's U visa and inadmissibility waiver. *Id.* ¶ 77. In that notice, USCIS acknowledged that its first notice had been issued in error based on its mistake that Mr. Doe had committed the crime of which he was actually the victim, *id.* ¶ 84, but explained that it intended to revoke Mr. Doe's U visa and inadmissibility waiver based on other circumstances, *id.* ¶¶ 85–86. Mr. Doe timely responded to the second notice and submitted additional documentation and legal argument to oppose the revocation. *Id.* ¶ 87.

In early 2020, USCIS revoked Mr. Doe's U visa and inadmissibility waiver. *Id.* ¶¶ 88, 90–98. USCIS also revoked Mrs. Doe's U visa and inadmissibility waiver, as they were derivative of Mr. Doe's status. *Id.* ¶¶ 88, 99–105. Each revocation notice warned Plaintiffs that USCIS could commence removal proceedings against them if they did not depart the United States within 33 days. *Id.* ¶ 109. The effect of the revocations on Mrs. Doe's status as a lawful permanent resident was unclear. *Id.* ¶ 108.

Plaintiffs filed suit to challenge the revocations, asserting claims under the Administrative Procedures Act ("APA"), Immigration and Nationality Act ("INA"), Due Process Clause, and Equal Protection Clause. ECF No. 1; *see* Am. Compl. ¶¶ 181–319. Two days after Plaintiffs commenced this action, USCIS denied Mr. Doe's application for adjustment of status, explaining that he had not established his eligibility to adjust his status because his U visa had been revoked. Am. Compl. ¶¶ 58–59, Ex. 2 [ECF No. 9-2]. Plaintiffs filed an amended complaint to assert additional claims challenging that denial. ECF No. 9. In their amended complaint, Plaintiffs sought injunctive and declaratory relief, an order permanently setting aside the revocations and denial of Mr. Doe's application and

4

directing USCIS to lawfully adjudicate his application, a writ of mandamus compelling Defendants to adjudicate Mr. Doe's application, and attorneys' fees and costs.  Am. Compl. at 113–15.  Plaintiffs also filed an ex parte motion for a temporary restraining order, ECF No. 10, but withdrew the motion after reaching an agreement with Defendants, ECF No. 13; Siekert Decl. ¶ 5 [ECF No. 32].  Pursuant to that agreement, USCIS withdrew the revocations, reinstated Plaintiffs' U visas, restored their waivers of inadmissibility, and reopened and approved Mr. Doe's application for adjustment of status.  Siekert Decl. ¶¶ 6–9, Exs. A–E [ECF Nos. 32-1–32-5].  Plaintiffs are both now lawful permanent residents of the United States.  *Id.* ¶ 10.

II

A court reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) must first determine whether the movant is making a "facial" attack or a "factual" attack.  *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015).  Defendants have introduced evidence outside the pleadings—USCIS's decisions to reinstate Plaintiffs' U visas and waivers of inadmissibility and to grant Mr. Doe lawful permanent resident status—making their attack on subject-matter jurisdiction factual.  Mem. in Supp. at 8 [ECF No. 31].  The factual nature of Defendants' attack enables the reviewing court to resolve disputed facts, applying no presumption of truth to the nonmoving party's allegations or evidence (or, for that matter, to the moving party's evidence).  *Branson*, 793 F.3d at 914–15; *Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990).

5

The United States Constitution limits the subject-matter jurisdiction of federal courts to ongoing cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. "[A]n actual [case or] controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (citations and internal quotation marks omitted). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (alteration in original) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)); *see Already*, 568 U.S. at 91 ("A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (quotation marks omitted)). If an action is moot because it no longer satisfies the case-or-controversy requirement, a federal court "ha[s] no discretion and must dismiss the action for lack of jurisdiction." *Ali*, 419 F.3d at 724 (citing *Powell v. McCormack*, 395 U.S. 486, 496 n.7 (1969)). There are four exceptions, however. A court should not dismiss an action as moot when:

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Abdiwali M. A. v. Sec'y Homeland Sec.*, No. 18-cv-2793 (DWF/TNL), 2019 WL 2107914, at *3 (D. Minn. Apr. 17, 2019) (citation omitted), *report and recommendation adopted*, 2019 WL 2108659 (D. Minn. May 14, 2019).

6

Plaintiffs maintain that their case is not moot because the voluntary cessation exception to mootness applies. Mem. in Opp'n at 3, 4–8 [ECF No. 39]. A defendant "cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. Rather, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Despite "imposing this burden on the defendant," the voluntary cessation doctrine does not allow a plaintiff "to rely on theories of Article III injury that would fail to establish standing in the first place." *Already*, 568 U.S. at 96.

Plaintiffs argue that Defendants "have provided no assurance that [their] status will not once again be reopened or revoked." Mem. in Opp'n at 7. Plaintiffs explain that although they "do not believe a future attempt by Defendants to revoke [their] previously approved I-485 applications would be lawful, Defendants' behavior in this case demonstrates that Defendants are willing to act unlawfully and attempt to revoke previously approved petitions they have no business revoking." *Id.* at 7 n.2. Defendants characterize any concerns that USCIS might reopen or revoke Plaintiffs' U visas, inadmissibility waivers, or lawful permanent resident status as "speculative" and "hypothetical." Reply Mem. at 4–5 [ECF No. 41]; *see* Mem. in Supp. at 11–13. Defendants point out that by approving Mr. Doe's application for lawful permanent residence, USCIS has demonstrated that the challenged conduct is unlikely to recur because

7

that decision required USCIS to conclude as a matter of law that Mr. Doe had been lawfully admitted as a U nonimmigrant. Reply Mem. at 4 (citing 8 C.F.R. § 245.24(b)(2)(i)).

Plaintiffs' concerns are insufficient to establish an ongoing controversy. Each of the allegedly unlawful actions taken by USCIS has been undone, and Plaintiffs are both now lawful permanent residents. Defendants aver that "further adverse action . . . cannot reasonably be expected to recur" now that Mr. Doe has been granted lawful permanent residence, Reply Mem. at 4, and Plaintiffs raise no basis other than Defendants' past conduct to oppose that assertion. Defendants' past revocations are not on their own enough to conclude that Defendants might reasonably be expected to repeat those actions. *See Ayyoubi v. Holder*, 712 F.3d 387, 390–91 (8th Cir. 2013) (stating the potential for USCIS to again reopen the plaintiff's application for adjustment of status was "too remote" to establish a continuing controversy). Moreover, any challenges Plaintiffs might bring to future actions taken by USCIS would be premised on a different record.

Plaintiffs also argue that their case should be allowed to proceed so that they may obtain relief for collateral injuries stemming from Defendants' actions. Plaintiffs first contend that their financial injury—$7,000 in attorneys' fees and at least $400 in filing fees and costs to bring this action—is irreparable unless remedied in this suit. Mem. in Opp'n at 3 n.1, 8–10; *see* Olsen Decl. ¶ 5 [ECF No. 38]. Plaintiffs tie this injury to Defendants, asserting that but for Defendants' actions pre-litigation, they otherwise would not have had reason to incur those expenses and that, but for paying those expenses, they would not have been able to convince Defendants to reverse their actions. Mem. in Opp'n at 8. Plaintiffs explain that if they "are not permitted to proceed to summary judgment to seek declaratory

8

judgments pronouncing Defendants' conduct unlawful" under the APA, INA, and United States Constitution, then they "will have no ability to seek attorney fees under the Equal Access to Justice Act ("EAJA") because [they] will be unable to establish that they are prevailing parties." *Id.* at 9.

Plaintiffs may not overcome mootness on this basis. "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation and internal quotation marks omitted). In determining whether a request for declaratory relief has become moot, the inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." *Id.* at 402 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Plaintiffs have not provided any authority to support their position that this case is not moot simply because they seek declarations that Defendants' past conduct, which has now been reversed, was unlawful.

Moreover, it is well-established that "[a]n interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (cleaned up); *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (U.S. 2020). Plaintiffs' intent to seek attorneys' fees under the EAJA is insufficient to sustain their case. *Tawakal Halal LLC v. United States*, No. 17-cv-04732 (ECT/TNL), 2019 WL 3322875, at *2 (D. Minn. July 24, 2019).

At the hearing on Defendants' motion, Plaintiffs for the first time stated an intent to seek *nunc pro tunc* relief with respect to the approval date of Mr. Doe's application for adjustment of status so he may have additional time credit toward his eligibility to apply for citizenship.  Plaintiffs did not request this relief from USCIS nor did they expressly request it in their amended complaint.  Plaintiffs also did not raise the issue in their briefing but instead asserted that an award of attorneys' fees would mean that "all the collateral detrimental consequences of Defendants' unlawful actions will be irrevocably eradicated." Mem. in Opp'n at 9.  Plaintiffs' request for *nunc pro tunc* relief is not properly before the Court for consideration, but, even if it were, Plaintiffs have not provided any authority demonstrating that such a request would be enough for their case to proceed.[5]

---

[5]     Even if it were enough, assuming jurisdiction existed to grant such relief, it is unlikely Mr. Doe would be entitled to this relief.  Courts have held that *nunc pro tunc* relief is available in immigration cases when it is necessary "to put the victim of agency error in the position he or she would have occupied but for the error" and "where agency error would otherwise result in an alien being deprived of the opportunity to seek a particular form of deportation relief." *Edwards v. Immigr. and Naturalization Serv.*, 393 F.3d 299, 310–11 (2d Cir. 2004) (cleaned up).  Here, absent *nunc pro tunc* relief, Mr. Doe would not be deprived of the opportunity to apply for citizenship; this opportunity would only be delayed, which would be insufficient to qualify him for *nunc pro tunc* relief.  *See, e.g.*, *Jafarzadeh v. McAleenan*, No. 16-cv-1385 (JDB), 2019 WL 2303854, at *5 n.3 (D.D.C. May 30, 2019); *Moreno-Gutierrez v. Napolitano*, No. 10-CV-00605-WJM-MEH, 2012 WL 2121923, at *4–5 (D. Colo. June 12, 2012).

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' motion to dismiss [ECF No. 29] is **GRANTED**; and

2. This action is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 5, 2021                     s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court